## HOLLINGSWORTH *v.* TRUEBLOOD ET AL.

EXECUTION.—*Trust and Trustee.—Sale of Trust Estate for Trustee's Debt.*—The trust estate held by one for another in a leasehold can not be sold on execution against the trustee.

SAME.—*Injunction.*—Where, subsequent to judgment against the trustee, but prior to execution thereon, the trustee assigns such trust estate to the beneficiary, and, subsequent to execution, the latter sells and assigns the same to another, the latter may enjoin a threatened sale of such estate on execution against the trustee.

SAME.—*Defence.—Fraud.*—The fact that such trust was created for the express purpose of preventing the trust estate from being taken to satisfy the debts, not of the trustee, but of the beneficiary, is no defence to such suit for injunction.

From the Marion Circuit Court.

*J. T. Dye* and *A. C. Harris*, for appellant.

*J. E. Heller*, for appellees.

HOWK, J.—This cause is now before this court for the second time. The opinion and decision of this court, when the case was here before, are reported under the title of *Trueblood* v. *Hollingsworth*, 48 Ind. 537.

The judgment of the court below was then reversed, upon the ground that the complaint did not state facts sufficient to constitute a cause of action. When the cause was remanded, the plaintiff, who is now the appellant, amended his complaint, in accordance with the opinion of this court. We find it necessary to a proper understanding of the questions now presented in this case, that we should give a summary at least of the facts stated in the amended complaint.

It appeared therefrom, in substance, that in April, 1868, one John Carlisle, then owning two certain lots, particularly described, in the city of Indianapolis, leased fifty feet of said lots to one Albert Cox, for a term of ten years, at an annual rental of three hundred dollars, to be used for a livery-stable; that, before said stable was built, said Cox assigned the lease to one David Mills, who, in the Summer of that year, began to erect the stable; that, before the stable was completed, Mills formed a partnership therein with one Andrew J. Lacey, who soon after assigned his interest therein to his brother, John Lacey; that on July 16th, 1868, at the instance and request of said John Lacey, and by the agreement of all the parties interested, a new lease was executed for the residue of the term, and for the same rental as in the old lease to Cox; that the new lease was made to John Lacey and one Layton Mills, the son of said David Mills, the said Layton taking the title to the one-half of said leasehold in trust for his father, said David Mills, and agreeing to so hold it for him; that said David Mills remained in possession of said stable, with John Lacey as his partner, till November 12th, 1868, when said Lacey sold his one-half thereof to the appellant; that the appellant and said David Mills then continued the business, as partners in the ownership of said stable, till January 5th, 1870, when the appellant purchased said David Mills' one-half thereof; that, during the time they were partners, they enlarged the stable at a cost of five thousand dollars; that said Layton Mills never had any interest in

the stable, nor was he ever in possession thereof, nor did he ever assert any ownership therein in any manner other than as holding, as trustee, for his said father; that on January 4th, 1869, the appellee Trueblood recovered a judgment against said Layton Mills, in the Marion Common Pleas Court, for one thousand eight hundred and twenty-eight dollars and fifty cents, on which an execution was issued on October 16th, 1869, to the appellee Parker, sheriff of Marion county; that said Layton Mills, on March 11th, 1869, assigned all his interest in said property to said David Mills; that in January, 1870, said Layton Mills died, and that soon afterward the said sheriff levied said execution on said leasehold and buildings, as the property of said Layton Mills, and had advertised, and would sell the same, if not enjoined. Wherefore the appellant prayed for an injunction, etc.

The appellees answered in two paragraphs.

In the first paragraph the appellees admitted the averments of the complaint, except that they denied that said Layton Mills agreed to take or hold the said demised premises in trust for said David Mills, or that said Layton received said grant as trustee for said David, or otherwise than in his own right, or that said David was in possession of said property, holding adversely to said Layton Mills; and they averred, that, if said David was in possession at any time, it was only as the agent of said Layton, and not otherwise.

In the second paragraph of their answer, the appellees did not, in terms, controvert any of the averments of the complaint; but they averred, that said Layton Mills took "the title to the undivided one-half of said leasehold interest in his own name, for the fraudulent and corrupt purpose, and with the corrupt and fraudulent intent, to cheat, hinder and delay the creditors of him, said David Mills, and to enable the said Layton Mills thereby to hold the same as against the creditors of said David Mills, and for no other purpose whatever."

Hollingsworth *v.* Trueblood *et al.*

The appellant demurred to the second paragraph of the answer, for the want of sufficient facts therein to constitute a defence to this action, which demurrer was overruled by the court below, and the appellant excepted. And the appellant then replied, by a general denial, to each paragraph of appellees' answer. And the issues joined were tried by a jury in the court below, and a general verdict was returned for the appellant; and, with their general verdict, the jury also returned their special findings upon particular questions of fact submitted to them by the parties, under the direction of the court, as follows: The interrogatories propounded to the jury by the appellant, and the answers of the jury thereto, were as follows:

"1. On July 16th, 1868, was not the title to the half of the leasehold placed in the name of Layton Mills at the suggestion and for the accommodation of John Lacey?

"Answer. Yes.

"2. Did not Layton Mills, on July 16th, 1868, take the title to half of the leasehold, by agreement then made, to hold in trust for David Mills?

"Answer. Yes.

"3. Did not he thus hold it in trust for David Mills until March 11th, 1869, when he reassigned the lease to David Mills?

"Answer. Yes.

"4. Did not the half of the leasehold held by Layton Mills belong, in fact, to David Mills at all times while the title was in the name of Layton Mills?

"Answer. Yes."

The appellees' interrogatories to the jury, and the answers thereto, were as follows:

"1. Was any express agreement made between David Mills and Layton Mills, on the 16th day of July, 1868, in Dye's office, at the time the new lease was drawn,

that Layton Mills should take the lease in his own name and hold it in trust for his father, David Mills?

" Answer.   Yes.

2.   Was not the agreement to substitute Layton Mills' name for David Mills' made at the request of John Lacey, and for the purpose of putting the title to the lease on the record in such shape that the claims of David Mills' creditors could not attach thereto, and make him trouble?

" Answer.   Yes.

" 3.   Was not David Mills in debt, and were there not several judgments of the common pleas and circuit courts on record in Marion county against him unsatisfied on the 16th day of July, 1868?

" Answer.   Yes.

" 4.   Was not David Mills insolvent on the 16th day of July, 1868?

" Answer.   Yes."

The appellees then moved the court below for a judgment in their favor, on the special findings of the jury, notwithstanding the general verdict, which motion was sustained, and judgment rendered accordingly, to which judgment and decision the appellant excepted, and appealed therefrom to this court.

The appellant has assigned in this court, as errors, the following decisions of the court below:

1.   In overruling the appellant's demurrer to the second paragraph of the appellees' answer;

2.   In sustaining the appellees' motion for a judgment in their favor, on the special findings of the jury, notwithstanding their general verdict; and,

3.   In overruling the appellant's motion for a new trial.

We will consider and decide what we regard as the material questions, presented by these alleged errors, in the order of their assignment.   We have no brief of this cause from appellees' counsel, in this court; and, therefore, we confess that we have found it difficult to com-

prebend the grounds of the decisions of the court below, complained of by appellant. As we understand the averments of the second paragraph of the appellees' answer, it was not intended therein or thereby to deny or put in issue the allegations of the complaint. In this paragraph, the appellees virtually concede that the leasehold estate, levied upon by the sheriff of Marion county, was not the property of Layton Mills, the execution-defendant; that David Mills, a stranger to the execution, was the beneficial owner of said property; and that said Layton Mills merely took and held the naked legal title to, without any beneficial interest in, the property so levied upon, for the sole purpose and with the sole intent, on his part, to save and protect it for his father from his father's creditors, and not from his own creditors. It is a palpable misnomer, as it seems to us, to denominate such purpose and intent of said Layton Mills as either corrupt or fraudulent on his part, as against his own creditors. And, if his purpose and intent were technically fraudulent, not corrupt, as against his father's creditors, surely his own creditors can not complain thereof, nor derive any benefit therefrom. The property was owned by David Mills, and the fact that Layton Mills took the naked legal title thereto in his own name, to "hold the same as against the creditors of said David Mills, and for no other purpose," did not make the property subject to levy and sale by the execution-creditors of said Layton Mills. In our opinion, the court below erred in overruling the appellant's demurrer to the second paragraph of the appellees' answer.

In section 337 of the practice act, it is provided, that, "When the special finding of the facts is inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly." 2 R. S. 1876, p. 172. But, if there is no inconsistency between the special findings and the general verdict, and a new trial is not granted, of course the judgment should be rendered

on the general verdict. In this case, we can not see the slightest inconsistency between the special findings of facts and the general verdict of the jury. For this reason, it seems very clear to us that the court below erred in rendering judgment for the appellees on the special findings of facts, notwithstanding the general verdict of the jury for the appellant. *Ridgeway* v. *Dearinger*, 42 Ind. 157, and *Comer* v. *Himes*, 49 Ind. 482.

The judgment is reversed, at the appellees' costs, and the cause is remanded, with instructions to the court be-. low to render judgment, on the general verdict, for the appellant, as prayed for in his complaint.

Petition for a rehearing overruled.